**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-14-08015-001-PCT-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Matthew Gene Tuttle, | |
| Defendant. | |

Defendant Matthew Gene Tuttle has filed a motion to suppress and to dismiss the indictment in this case. Doc. 110. The government has filed a response. Doc. 118. At a status conference on August 17, 2015, defense counsel stated that no reply would be filed. The Court held an evidentiary hearing on September 30, 2015. For the reasons that follow, the Court will deny Defendant's motion.

**I.  Facts.**

The following facts are taken largely from Defendant's motion and the evidentiary hearing. In the early afternoon of November 22, 2013, Defendant Matthew Gene Tuttle was walking alone along Forest Service Road 231 in the Coconino National Forest. United States Forest Service Law Enforcement Officer Michael Loughton was conducting a patrol of the area in a marked United States Forest Service truck. Officer Loughton came upon Defendant walking in the middle of the road and observed that he was soaking wet. Because it was 34 degrees, there was fresh snow on the ground, and

Defendant's condition presented a risk of hypothermia that could lead to death, Officer Loughton decided to conduct a welfare check. Officer Loughton stopped his vehicle about ten feet from Defendant, got out, and, standing about five or six feet from Defendant, asked if he was alright. Defendant answered that he was on a walk. When Officer Loughton asked where Defendant was going, he said that he did not know.

Officer Loughton requested Defendant's identification. Defendant said that he had been kidnapped in Minnesota and left in Arizona and that his wallet had been stolen. Officer Loughton asked Defendant for his name and date of birth, and Defendant provided them. Still standing outside his vehicle, Officer Loughton radioed for a warrant check using Defendant's name and date of birth. The radio dispatcher responded that there was an active warrant for Defendant's arrest from the Flagstaff Justice Court for failure to appear.

When the dispatcher announced the existence of the warrant, Defendant became agitated and began to walk away. Officer Loughton stepped forward, next to Defendant, put up his hand, and told Defendant to stop. In response, Defendant punched Officer Loughton twice, once in the face and once on the top of the head as the officer ducked, and ran into the woods.

Officer Loughton chased Defendant northward through a meadow and group of trees. Officer Loughton tackled Defendant, who fought back, trying to gouge the officer's eyes and biting the officer on the leg. The officer struck Defendant several times, tazed him several times, and eventually succeeded in applying handcuffs.

**II.     Analysis.**

Defendant contends that his Fourth Amendment rights were violated when Officer Loughton converted a welfare check into an investigatory stop without reasonable suspicion. For reasons that follow, the Court does not agree.

**A.     Welfare Check.**

Defendant does not dispute that Officer Loughton acted reasonably in conducting a welfare check. The officer came upon Defendant walking alone on a remote forest

road, in late November, soaking wet. It had just snowed, and the temperature was 34 degrees. Given these facts, a welfare check was entirely appropriate. Indeed, Officer Loughton would have neglected his duties had he not checked on Defendant's welfare.[1]

After Defendant said he was out for a walk and did not know where he was going, Officer Loughton asked for his identification. When Defendant said his identification had been stolen, the officer asked for his name and date of birth. These requests did not transform the welfare check into an investigatory stop. "For purposes of the Fourth Amendment, a seizure occurs when an officer, through some form of physical force or show of authority, restrains the liberty of a citizen." *United States v. Summers*, 268 F.3d 683, 686 (9th Cir. 2001) (citations omitted). Such restraint occurs if, "taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *United States v. Brown*, 563 F.3d 410, 415 (9th Cir. 2009) (citations omitted). While officers need reasonable suspicion of criminal activity to justify an investigatory stop, no such justification is needed for a consensual encounter. *Summers*, 268 F.3d at 686. "When an encounter is voluntary, no constitutionally protected right is implicated." *Id.*

Officer Loughton's initial encounter with Defendant was consensual. The officer pulled up in his truck, did not activate his lights or siren, did not brandish a weapon, did not command Defendant to stop, and did not block Defendant's path. The officer stepped out of his vehicle and asked Defendant if he was alright. There was no show of physical force or authority necessary to constitute a Fourth Amendment seizure. Officer Loughton's actions would not "have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Brown*, 563 F.3d at 415 (citations omitted).

The officer did ask questions of Defendant, but it is well settled that police

---

[1] Officer Loughton also noted that Defendant was covered with soot, a condition common for people living in small, illegal enclosures in the forest where fires are used for warmth.

- 3 -

questioning of willing individuals in a public place does not constitute a Fourth Amendment seizure. *United States v. Turvin*, 517 F.3d 1097, 1100 (9th Cir. 2008); *see also INS v. Delgado*, 466 U.S. 210, 216 (1984) ("While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response."). The officer asked to see Defendant's identification, and then asked for his name and date of birth. This did not convert an otherwise consensual encounter into a seizure. *See Hiibel v. Sixth Judicial Dist. Ct.*, 542 U.S. 177, 185 (2004) ("In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment."); *Gilmore v. Gonzales*, 435 F.3d 1125, 1137 (9th Cir. 2006) ("The request for identification . . . does not implicate the Fourth Amendment.") (citing *Delgado*, 466 U.S. at 216); *United States v. West*, No. 09-cr-536-PHX-DGC, 2009 WL 2259717, at *4 (D. Ariz. July 29, 2009).

### B.     Warrant Check.

Once he obtained Defendant's name, Officer Loughton radioed for a warrant check. Officer Loughton testified that he does this as a matter of routine practice whenever he encounters someone in the course of his work. He has been trained to run warrant checks, and does so for his own safety because he often encounters people when he is alone. Officer Loughton testified that he spoke with Defendant for about two and one-half minutes before making the radio call, and that he received the radio response within one minute. All of this occurred while he was standing outside his truck, five or six feet from Defendant.

The Court cannot conclude that the warrant check violated Defendant's Fourth Amendment rights. It occurred as part of a consensual encounter, did not involve any significant delay, did not involve any additional restraint, and merely accessed public information. As noted above, the Fourth Amendment does not prohibit consensual encounters where police officers ask persons questions, including requests to see their identification. The Court cannot conclude that the additional step of checking for warrants, when the person is not detained or unreasonably delayed, somehow converts

the consensual encounter into a Fourth Amendment seizure. This is particularly true when an officer is working alone in a remote location. Officer safety concerns justify a brief radio inquiry to determine whether the person, particularly one in strange circumstances like those of Defendant, presents any possible threat to the officer. Defendant has cited no case holding that such a warrant check violates the Fourth Amendment, and, considering the totality of the circumstances, the Court concludes that it did not.

### C. Attempted Stop of Defendant.

Once Officer Loughton knew there was an outstanding warrant for Defendant's arrest, he had a valid Fourth Amendment basis to stop Defendant. The Supreme Court has held that, "[a]bsent an attack on the validity of the warrant," an arrest on the basis of an outstanding warrant "gives rise to no claim under the United States Constitution." *Baker v. McCollan*, 443 U.S. 137, 143-44 (1979). Defendant does not challenge the validity of the warrant on which he was arrested.

As the radio dispatcher reported the warrant, Defendant began walking away. Officer Loughton stepped up to Defendant and told him to stop. This attempted detention was entirely valid once Officer Loughton knew there was a warrant for Defendant's arrest.

### D. Apprehension of Defendant.

After Defendant punched Officer Loughton and began to run, the officer had two valid grounds for pursuing and arresting him – the outstanding warrant and the fact that Defendant had just assaulted a law enforcement officer. Officer Loughton's arrest of Defendant did not violate the Fourth Amendment. The force used in the arrest was justified by Defendant's striking and biting of the officer and his attempts to gouge the officer's eyes.

### E. Forest Service Policy.

Defendant argues that Officer Loughton's actions violated Forest Service policy. Even if true, violation of such policy, without a violation of the Fourth Amendment, does

not constitute a basis for suppressing evidence. *United States v. Hinton*, 222 F.3d 664, 674-75 (9th Cir. 2000) ("suppression is not the appropriate remedy for a failure to follow agency regulations"); *United States v. Ani*, 138 F.3d 390, 392 (9th Cir. 1998) ("Absent a constitutional violation or a congressionally created remedy, violation of an agency regulation does not require suppression of evidence.") (citations omitted).

**IT IS ORDERED** that Defendant's motion to suppress and dismiss (Doc. 110) is **denied**.

Excludable delay pursuant to U.S.C. § 18:3161(h)(1)(D) is found to run from 7/31/2015.

Dated this 1st day of October, 2015.

_____
David G. Campbell
United States District Judge